IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–02757-PAB-MDB

BILLIE SMITH
TRACY SMITH

    Plaintiffs,

v.

TARA MEDINA
COLLEEN ROMERO

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

    This matter is before the Court on Plaintiffs' "Motion for Declaratory and Injunctive Relief." (["Motion"], Doc. No. 47.) The Motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. Nos. 19; 48.) Defendants have responded to the Motion. (["Response"], Doc. No. 57.) In light of the extensive filings in this case[1] and Plaintiffs' desire to proceed to a hearing quickly, the Court determined a reply was not necessary. (Doc. No. 56.)

---

[1] Plaintiffs have filed various motions and other requests, including a Motion to Join Plaintiff (Doc. No. 30), a Motion to Submit Supplemental Pleading (Doc. No. 33), a Motion Requesting Preliminary Evidentiary Hearing (Doc. No. 49), a Motion for Expedited Discovery (Doc. No. 52), a Brief for February 1, 2023 Status Conference (Doc. No. 54), a Motion to Strike (Doc. No. 69), and just before the hearing, a Motion for Partial Summary Judgment (Doc. No. 72). Plaintiffs are proceeding *pro se* and the Court understands that the multiple filings may reflect confusion about standard procedures. For that reason, the Court has held two conferences, issued clarifying minute orders, and granted Plaintiffs' request for a hearing, giving the parties an

Although they do not call it a motion for a preliminary injunction, Plaintiffs' arguments in support of the Motion reflect a request for preliminary relief. (Doc. No. 47 at 8 (stating, "[t]o obtain a preliminary injunction Plaintiff asserts four factors by a preponderance of the evidence…" and proceeding to list the factors a court considers in determining whether or not to grant a request for preliminary injunctive relief).) The Court therefore construes the Motion as one for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. *See generally Oakley v. Zavaras*, 2010 WL 114221, at *1 (D. Colo. Jan. 11, 2010) (construing a motion for early relief as a motion for a preliminary injunction).[2]

The Court held a hearing on this Motion on March 16, 2023. (Doc. No. 76.) At that time, the parties presented documentary and testimonial evidence in support of, and in opposition to, the Motion. The parties also presented legal and factual arguments. For the following reasons, it is **RECOMMENDED** that the Motion be **DENIED**.

### SUMMARY FOR *PRO SE* PLAINTIFFS

The Court is recommending that your request for preliminary injunctive relief be denied. The law requires a showing of irreparable harm before the court can issue a preliminary injunction and here, the harm you claim does not satisfy the standard for irreparable harm.

---

opportunity to offer evidence and present witness testimony. (Doc. Nos. 56, 76.) Since then, Plaintiffs have filed Objections to Untrue Assertions (Doc. No. 75), Objections to Courtroom Minutes (Doc. No. 78), a Motion to Stay Proceedings (Doc. No. 81), an Objection to 83 Minute Order (Doc. No. 84), and an Objection to Courtroom Minutes (Doc. No. 85). Additionally, Defendants have filed a Motion to Dismiss. (Doc. No. 42.)

[2] To the extent the Motion can be construed as Plaintiffs' request to amend their complaint again, the Court recommends allowing Plaintiffs the opportunity to amend their complaint once more to include claims for injunctive relief. Their operative Complaint reflects an intent to bring such claims, and their pleadings should be liberally construed in light of their *pro se* status. *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

This is only a high-level summary of the Court's decision. The complete decision is set forth below, including information about your right to object to this Recommendation within a set period of time.

## STATEMENT OF THE CASE

*Pro se* Plaintiffs Billie and Tracy Smith ["Plaintiffs"] bring a Section 1983 claim and a deprivation of due process claim against two employees of Costilla County ["the County"]. (Doc. No. 39 at 3.) Both Ms. Medina and Ms. Romero are employed by the County. (Doc. No. 39 at 10, 15; Doc. No. 76.)

The claims arise in connection with Plaintiffs' efforts to secure a construction permit, which permit is dependent on obtaining an On-Site Wastewater Treatment System ["OWTS"] permit. To secure an OWTS permit, Plaintiffs are required to comply with the Costilla County Planning and Zoning Department Residential Development Policy and Procedure ["Costilla Policy"]. (Doc. No. 71-2.) It provides:

> An On-Site Wastewater Treatment System (OWTS) permit must be obtained prior to the issuance of a construction permit for a new residence unless the residence is to be served by a sewage treatment works, and no person shall construct or maintain any dwelling or other occupied structure which is not equipped with adequate facilities for the sanitary disposal of sewage.[3]

(Doc. No. 71-2 at 3 (citing C.R.S. § 25-10-112).) Plaintiffs allege that Ms. Medina explained the OWTS permitting process as follows:

- You apply for the permit

---

[3] The Costilla Policy also provides that "[d]evelopers *may be* required to install the OWTS prior to being issued a construction permit." (*Id.*) During the March 16, 2023, evidentiary hearing on Plaintiffs' Motion, the Court heard testimony from a former county employee who explained that a developer may not have to install an OWTS prior to being issued a construction permit if they can connect to city's water system. (Doc. No. 76.)

3

- We review the soil evaluation
- We will call to tell you to install it (Which we did all ready)
- You call for an inspection

(Doc. No. 39 at 11 (quoting from an email Defendant Medina sent to Billie Smith on October 10, 2022).) Plaintiffs take issue with this process, arguing it "is not documented anywhere in the Costilla County Residential Development Policy and Procedure document Plaintiff received from the county." (Doc. No. 39 at 11.) Plaintiffs further allege that they have "never seen a situation where county officials withhold a permit until after construction is completed," and they are concerned that "unjust motives may be behind Defendants' conduct. Plaintiff[s] also fear[ ] being drawn into a situation where [they] do[] not have documentation of exactly what [they are] permitted to install or required to install."[4] (*Id.*)

In their Complaint, Plaintiffs,

> …ask[ ] the court to understand that the facts of this case are particularly vexing as Defendants claim to have verbally granted plaintiff the right to install an OWTS system while unreasonably and without explanation of their legal basis or authority to withhold the actual permit, refuse to provide this [o]fficial approved documents [sic] which plaintiff[s] must rely on in order to install the OWTS System properly and legally.

(Doc. No. 39 at 8.) Plaintiffs further state,

> "**Defendant Medina claims in her email that 'we' have 'all ready' [sic] given verbal authorization for the OWTS system installation but, inexplicably refuses to provide the actual OWTS [p]ermit until she approves of the OWTS *after* installation** which Plaintiff asserts to be a in violation of Colorado's **Basic Rules for Local Administration** while also violating Plaintiff's rights to and due process and to benefit from her private property."

---

[4] The Court notes that some of Plaintiffs' allegations refer to the singular Plaintiff, Billie Smith, who was the original Plaintiff, later joined by Tracy Smith.

(*Id.*) (emphasis in original). In other words, Plaintiffs do not dispute that they have been granted permission to install an OWTS, but they believe Defendants are withholding the permit unreasonably and contrary to applicable law.

Plaintiffs also take issue with Defendant Colleen Romero's involvement.[5] First, Plaintiffs allege they paid Defendant Romero "$500 directly for [s]oil [t]ests that should have been included as part of the [f]ee paid to County Treasurer Lorraine Medina as well as for [s]eptic [d]esign[.]" (Doc. No. 39 at 8.)  Second, they claim Ms. Romero insisted on an "[i]nfiltrator chambers" as part of her septic system design, and that Ms. Romero "took no measurements, performed no perc test, left her truck running, and within 5 minutes of arriving on site pronounced that Plaintiffs would need 20 chambers (120 linear feet) while erroneously stating that [P]laintiffs would need 380 feet of [p]ipe and [g]ravel[.]" (Doc. No. 47 at 3.) Plaintiffs take issue with that recommendation. (*See* Doc. No. 39 at 13 ("Plaintiff expressed to Ms. Romero [Plaintiffs'] belief that while a [g]ravel and [p]ipe system and concrete septic tank costs more they represent better value and are less likely to develop low spots and pest infiltration common

---

[5] Ms. Romero works for Costilla County and is also listed on the County website as one of two registered contractors competent in septic system design. *Planning & Zoning*, COSTILLA CUNTY, https://costillacounty.colorado.gov/departments/planning-zoning (last visited April 3, 2023). Ms. Romero was chosen to perform the requisite soil evaluation, and she submitted her report to the County on behalf of Ms. Smith. Ms. Romero's first submission was not approved. ((*Id.*; *see* Doc. No. 71-6 (Soil Evaluation Report stamped "not approved").) Her second submission, however, was approved. (*See* Doc. No. 71-5 (Soil Evaluation Report stamped "Approved").) On that basis, Plaintiffs were allowed to move forward with the installation of an OWTS. (*See* Doc. No. 71-4 (email exchange between Billie Smith and Tara Medina, occurring approximately 2 ½ weeks after approval of the Soil Evaluation Report, wherein Ms. Medina explains the permitting process and confirms that the County has already called Plaintiffs to let them know they can install their OWTS).) However, as of the date of the hearing on this Motion, Plaintiffs had not installed an OWTS.

with [g]ravelless [i]nfiltrator chambers. Further Plaintiff explained that she had gravel and pipe leach field in South Carolina and had never had a problem with it….Yet Ms. Romero persisted in trying to persuade Plaintiff to use [g]ravelless [i]nfiltrator chambers instead of [g]ravel and [p]erforated [p]ipe[.]").)[6]

> In connection with their grievances against Ms. Romero, Plaintiffs request the following:
>
> that the money paid to Ms. Romero be returned to Plaintiff as Romero failed to provide appropriate soil evaluation and design services and demonstrated her personal lack of competence in failing to provide an appropriate design for the septic system while also charging a fee for services that should have been covered by the $500 plaintiff paid directly to the County Treasurer.

(Doc. No. 39 at 18.) In connection with their concerns about the OWTS permitting process, Plaintiffs request injunctive relief, and claim that "the full extent of damages" cannot be known "until a thorough assessment of Plaintiff[s'] property is performed and when, and under what terms the official permit in question is actually issued as damages continue to accrue due to Defendants' ongoing refusal to provide the OWTS permit." (*Id.* at 5.)

***Procedural History, the Motion, and the Hearing***

---

[6] Plaintiffs also suggest the possibility of a conflict given Ms. Romero's dual role as an independent contractor and a County employee. The Court heard sworn testimony that Ms. Romero is one of several persons capable of performing the requisite soil evaluation in connection with an OWTS permit, that when she does this work, she does it on the weekends and on her own time, and that people have a choice concerning who to hire. Because people often ask for soil evaluation referrals, the County lists the email addresses of qualified individuals on their site; however, people are free to use anyone qualified, even if not on the list. (*Id.*); *see Planning & Zoning*, COSTILLA COUNTY, https://costillacounty.colorado.gov/departments/planning-zoning (last visited April 3, 2023). To the extent Plaintiffs are alleging a conflict, the Court is not expressing a view on whether there is or there is not one, but Plaintiffs have not demonstrated how any alleged conflict entitles them to preliminary injunctive relief.

This case was filed on October 19, 2022, a little over a week after the email exchange between Billie Smith and Tara Medina, wherein Ms. Medina explained the permitting process and told Plaintiffs they could move forward with the installation of an OWTS. (Doc. No. 1; Doc. No. 71-4.) The First Amended Complaint was filed on October 25, 2022, the Second Amended Complaint was filed on November 22, 2022, and the Third Amended Complaint—which is the operative Complaint—was filed on January 17, 2023. (Doc. Nos. 5, 13, 39.)

This Motion was filed on January 24, 2023, a few days after the operative Complaint was filed. In it,

> Plaintiffs contend that Defense Counsel's most recent statements on behalf of Defendants Medina and Romero should literally be construed as ongoing and prospective coercion of the installation and inspection of a nonsensical OWTS design prepared by Defendants without issuing a signed and duly authorized PERMIT to Plaintiffs while clearly stating Defendants intent to prevent Plaintiffs from obtaining the Construction Permit through this illegal refusal to issue the OWTS PERMIT of Design.

(Doc. No. 47 at 2 (emphasis in original).) They also argue that,

> Defendants still, by pronouncement alone, state prospectively that a [c]onstruction PERMIT will not be issued until the [s]eptic [s]ystem is completed and inspected PRIOR TO DEFENDANTS ISSUING A LEGITIMATE PERMIT OF DESIGN AND PRIOR TO PROVIDING AN APPROPRIATE DESIGN SPECIFICATION. These conditions are simply nonsensical, indicative of illicit motivations, and clearly not rationally related to any conceivable government interest.

(Doc. No. 47 at 3 (emphasis in original).) As relief, Plaintiffs request a declaration that,

> [p]roperty [r]ights are fundamental rights; And the restrictions on Plaintiffs' rights should therefore be reviewed under strict scrutiny; [a]nd therefore restrictions and processes imposed by Defendants on Plaintiffs use of their property are not presumed to be [c]onstitutional; [a]nd therefore the burden of proving the [c]onstitutionality of the restrictions imposed by Defendants on Plaintiffs use of their property falls on Defendants.

(Doc. No. 47 at 15.) Plaintiffs also seek an injunction ordering defendants to,

7

> …follow the text of CRS 25-[10]-112 and CRS 25-10-106 and CRS 29-20-203 stated in more plain language that: A PERMIT to construct a dwelling requires that a signed [l]egitimate OWTS [o]fficial PERMIT of [d]esign shall be issued prior to, or in conjunction with, issuance of a [c]onstruction [p]ermit; And, that the OWTS [o]fficial PERMIT [o]f [d]esign shall be issued prior to Inspection of the OWTS by the local public health agency or its designated [p]rofessional [e]ngineer after construction, installation, alteration, or repair work on an OWTS performed under an OWTS [p]ermit of [d]esign has been completed, but before the system is placed in use, to determine that the work has been performed in accordance with the OWTS PERMIT of [d]esign; [a]nd, that the OWTS [o]fficial PERMIT of [d]esign is sufficient to satisfy OWTS [p]ermit requirements that are required prior to, or in conjunction with, the issuance of a [c]onstruction PERMIT; [a]nd that an [o]ccupancy PERMIT for the use of a dwelling requires a final inspection of the installed OWTS to be made by the local public health agency or its designated [p]rofessional [e]ngineer after construction, installation, alteration, or repair work on an OWTS performed under an OWTS PERMIT of [d]esign has been completed, but before the system is placed in use, to determine that the work has been performed in accordance with a [l]egitimate OWTS PERMIT of [d]esign.

(*Id.*) Put simply, Plaintiffs contend they are being coerced into installing a particular OWTS design, and they seek an OWTS permit before an OWTS system is installed and inspected, as well as a declaration of certain rights in connection with the permitting and construction process. (*Id.* at 2–3, 15.)

Defendants respond that Plaintiffs' request for relief alters the status quo because the seek a permit that is not currently offered by the County. (Doc. No. 57 at 3.) That is, Plaintiffs seek a permit for their design, rather than the actual OWTS, which is what the County requires. (*Id.*) Defendants also argue that Plaintiffs are not likely to prevail on the merits, and that because they are not precluded from moving forward with their OWTS, they cannot show irreparable harm. (*Id.* at 4–5.) For that same reason, Defendants argue that the harm to Plaintiffs—if any—is outweighed by the harm to Defendants, and that the public interest is not served by an injunction. (*Id.* at 5–6.) Finally, Defendants argue that the balance of equities favors Defendants because a

preliminary injunction "could undermine the local enforcement scheme designed to protect the health and safety of Costilla County residents." (*Id.* at 6.)

During the March 16, 2023, hearing on this Motion, and in response to the Court's order granting Plaintiffs' request to examine Taylor Watkins, Mr. Watkins voluntarily appeared and submitted to examination. (Doc. No. 76.) Mr. Watkins is now a former Costilla County employee. (Doc. No. 63 ¶ 3.) Plaintiffs questioned Mr. Watkins first for approximately 45 minutes, and then again after the County examined Mr. Watkins and the Court asked follow-up questions. (Doc. No. 76.) Ms. Medina also testified during the hearing. (*Id.*) Among other things, she testified that the reason the OWTS permit process requires installation of the OWTS *before* issuance of a permit, is because the County must be sure that the installation does not compromise the health and safety of residents by, for example, allowing waste to reach and contaminate groundwater. (Doc. No. 76.) Additionally, various exhibits were submitted by the parties, and they were admitted during the hearing. (*Id.*)

At the conclusion of the parties' presentations, the Court forecasted its decision on the instant Motion, and it ruled on Plaintiffs' pending Motion to Strike (Doc. No. 69), and Defendants' Motion to Stay. (Doc. No. 43.) Specifically, the Court denied Plaintiffs' Motion to Strike, explaining that Plaintiffs' objectives were more appropriately achieved through responses and replies to pending motions rather than a Motion to Strike. (Doc. No. 76.) The Court also granted the Defendants' Motion to Stay, applying each of the five *String Cheese* factors and concluding three of them weighed in favor of a stay, one against it, and one was neutral. (*Id.*)[7]

---

[7] Upon hearing the Court's decision on these motions, Plaintiffs became upset, moved for reconsideration twice, and threatened to report the Court for allegedly misapplying the law. The Court noted Plaintiffs' displeasure and frustration, and explained to Plaintiffs that they have

9

On this Motion, the Court is called upon to determine whether Plaintiffs are entitled to preliminary injunctive relief in the form of an order directing the issuance of an OWTS permit.[8]

## STANDARDS OF REVIEW

### I. Legal Standard for *Pro Se* Plaintiffs

Plaintiffs are proceeding *pro se*. The Court, therefore, "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). This rule applies to all proceedings involving *pro se* litigants. *Hall v. Bellmon,* 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); *see, e.g.*, *Smith v. Crockett*, 2022 WL 366914, at *3-6 (D. Colo. Jan. 20, 2022) (liberally construing *pro se* pleadings in review of a motion seeking preliminary injunctive relief). However, Plaintiffs' *pro se* status does not vitiate their obligation to adhere to, and

---

several options for expressing disagreement with the Court's decisions. The Court gave Plaintiffs an opportunity to ask questions about process, at which point Plaintiffs disconnected from the line. (*See* Doc. No. 76.) It is unclear whether Plaintiffs purposely disconnected as an expression of frustration or whether Plaintiff's were experiencing technical difficulties.

[8] To the extent this Motion also asks for a declaration that property rights are fundamental rights, and that a particular standard applies to Plaintiffs' claims, that relief is not appropriate for a preliminary injunction and the Court recommends denying the request. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (stating that a federal court lacks jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it" (citations omitted)). To the extent this Motion asks for the return of $500 in connection with payment of those funds to Ms. Romero, that is also not a proper basis for preliminary injunctive relief. *See Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) ("It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages.").

comply with, "the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (stating that a *pro se* litigant must "comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure"). Thus, while the Court makes "some allowances" for Plaintiffs' "failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence structure, or [their] unfamiliarity with the pleading requirements," the Court will not "take on the responsibility of serving as [their] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall,* 935 F.2d at 1110) (alteration omitted); *see also Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the [*pro* se] plaintiff in the absence of any discussion of those issues").

## II.     Legal Standard for Preliminary Injunction Requests

Federal Rule of Civil Procedure 65 authorizes the Court to enter preliminary injunctions and issue temporary restraining orders. Fed. R. Civ. P. 65(a)-(b). A preliminary injunction is an "extraordinary" remedy; accordingly, the movant's right to relief must be "clear and unequivocal." *Aphosian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (citation omitted). A party seeking preliminary injunctive relief must show: (1) a likelihood of success on the merits; (2) a threat of irreparable harm, which outweighs any harm to the nonmovant; and (3) that the injunction would not adversely affect the public interest. *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)).

It is well-settled that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Therefore, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* If the movant fails to meet his burden of establishing irreparable injury, the Court "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game & Fish*, 854 F.3d at 1249.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Id.* at 1251 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)) (alteration omitted). It is not enough for the harm to be "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). The movant "must establish both that harm will occur, and that, when it does, such harm will be irreparable." *N.M. Dep't of Game & Fish*, 854 F.3d at 1249 (quoting *Vega v. Wiley*, 259 F. App'x 104, 106 (10th Cir. 2007)). Moreover, the alleged harm must be "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman*, 348 F.3d at 1189) (emphasis added). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). "[A] speculative or theoretical injury will not suffice." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) (citing *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

Finally, it is important to note that the goal of a preliminary injunction is to preserve the pre-trial status quo. "Status quo" is the last uncontested status between the parties before the controversy arose. *See Schrier*, 427 F.3d at 1260. Therefore, courts view the following types of injunctions with caution: (1) preliminary injunctions that alter the status quo; (2) preliminary injunctions that require the nonmoving party to take affirmative action ("mandatory preliminary injunctions"); and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial. *RoDa Drilling Co.*, 552 F.3d at 1208 (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam)). Whether to issue a preliminary injunction lies in the sound discretion of the trial court. *See Id.* (citations omitted).

## ANALYSIS

At the heart of Plaintiffs' Motion is a demand for an OWTS permit, even though Plaintiffs have not yet installed an OWTS and made it available for inspection. According to testimony from Mr. Watkins and Ms. Medina, issuance of an OWTS permit *before* installation and inspection, would be contrary to the County's policies. (Doc. No. 76.) Specifically, Ms. Medina testified that the County needs to be sure the OWTS is installed appropriately and in a way that does not compromise public health and safety. (*Id.*) Those assurances can only be obtained *after* the OWTS is installed and inspected. Ms. Medina explained that this is similar to the issuance of occupancy permits. (*Id.*) Occupancy permits require an inspection of a fully constructed structure. This is because the County cannot conclude the structure is constructed safely and accordance with all applicable laws and regulations, until the structure is actually constructed and inspected.

After reviewing the parties' briefing, supporting documentation and exhibits, and hearing testimony during the March 16, 2023, hearing, the Court concludes that Plaintiffs' proposed injunction would require Defendants to take affirmative action that is contrary to their own policies and procedures. The Court is therefore persuaded that the injunction will alter the status quo. For this reason, the Court views the Motion with some skepticism and reviews Plaintiffs' request closely to determine whether there are truly any exigencies that would justify this extraordinary relief. *See generally RoDa Drilling*, 552 F.3d at 1209.

***Irreparable Harm***

The Court begins its analysis with irreparable harm as this factor may be dispositive under Tenth Circuit law. *Dominion*, 356 F.3d at 1260 ("[A] showing of probable irreparable harm is the single most important *prerequisite*" (emphasis added)); *N.M. Dep't of Game & Fish*, 854 F.3d at 1249 (finding "the Department failed to meet its burden of showing a significant risk of irreparable injury," therefore the court did not "need not address the remaining preliminary injunction factors"). Under the irreparable harm prong, Plaintiffs argue the following:

> It is now approaching 6 months since Plaintiff paid fees including the OWTS Permit fee needed to [c]onstruct a [m]odest seasonal residence. Continued delays by Defendants will likely cause Plaintiffs further irreparable harm by the spoilage or loss of materials that are onsite, degradation of the excavated site for the OWTS system in question; damage to a stand of [pinyon] pines that are irreplaceable in Plaintiffs['] lifetime[s]; as well as capital losses related to the time value of money and lost appreciation of valuable assets and lost economic use of Plaintiffs' private property. Plaintiffs also doubt Defendants ability to compensate them for these losses after a [j]udgement on the [m]erits.

(Doc. No. 47 at 11.)

In response, Defendants argue that Plaintiffs are not precluded from moving forward in their construction plans, and that indeed, Plaintiffs have already begun construction of the

14

OWTS. (*See* Doc. No. 57 at 4 (citing Doc. No. 39 at 10, 18).) Defendants also argue that any alleged "spoilage and loss of materials are due to Plaintiffs' own decisions to (1) suspend the installation they already started, (2) not accept Tara Medina's yes for an answer, and (3) instead file a lawsuit to complain about the form of the permit[.]" (Doc. No. 57 at 4–5.)

The Court finds that to the extent Plaintiffs are suffering or will suffer some harm in connection with their inability to use their property as they would like, it is not because they are precluded from moving forward with installation of the OWTS, or any other construction process for that matter. Instead, it is because Plaintiffs do not want to move forward on the County's terms. The evidence presented during the March 16, 2023, hearing made clear that the County has informed Plaintiffs that they can indeed proceed with installing an OWTS, and that once the OWTS is inspected and approved, Plaintiffs can move forward as it concerns a construction permit. (Doc. No. 76.) However, Plaintiffs are not satisfied with these statements and "fear[ ] being drawn into a situation where [Plaintiffs] [do] not have documentation of exactly why [they] [are] permitted to install or required to install." (Doc. No. 39 at 11.) But a preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut*, 282 U.S. at 674; *State*, 989 F.3d at 884 ("[A] speculative or theoretical injury will not suffice."). In other words, here, Plaintiffs have not demonstrated harm that is "both certain and great," and of the type required for a preliminary injunction. *New Mexico Dep't of Game & Fish*, 854 F.3d 1236 at 1250 (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).  Moreover, any additional harm described by Plaintiffs, including loss of materials, damage to trees, and loss of capital, (Doc. No. 47 at 11), is economic

harm and does not entitle Plaintiffs to preliminary injunctive relief. *See Heideman,* 348 F.3d at 1189 (stating that "simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages.").

Because Plaintiffs have not satisfied the irreparable harm prong, they are not entitled to preliminary injunctive relief. *See Dominion*, 356 F.3d at 1260 (noting that without irreparable harm, injunctive relief is not available); *Smith v. United States*, No. 13-cv-01156-MSK-KLM, 2013 WL 6406263, at *2–3 (D. Colo. Sept. 19, 2013) (finding no basis for the issuance of a preliminary injunction, where *pro se* plaintiffs "fail[ed] to show with any specificity how they w[ould] be irreparably harmed in the absence of the requested injunctive relief").

## CONCLUSION

For the reasons set forth herein, this Court respectfully **RECOMMENDS** that Plaintiffs' Motion for Declaratory and Injunctive Relief (Doc. No. 47), be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of April, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge