IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02757-PAB-MDB

BILLIE SMITH, and
TRACY SMITH,

      Plaintiffs,

      v.

TARA MEDINA, and
COLLEEN ROMERO,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Dismiss Third Amended

Complaint (ECF 39) [Docket No. 42].  The Court has jurisdiction pursuant to 28 U.S.C.

§ 1331.

## I.   BACKGROUND[1]

Plaintiffs Billie Smith and Tracy Smith reside in South Carolina.  Docket No. 39 at

2.  Plaintiffs[2] own property in Costilla County, Colorado.  *See id*. at 9, 18.  Plaintiffs seek

_____

[1] The facts below are taken from plaintiffs' third amended complaint, Docket No. 39, and are presumed to be true for purposes of ruling on defendants' motion to dismiss.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[2] The Court notes that plaintiffs' allegations in the third amended complaint frequently refer to "plaintiff" in the singular instead of "plaintiffs."  *See, e.g.*, Docket No. 39 at 8.  The original plaintiff in this case was Billie Smith.  *See* Docket No. 1.  On January 13, 2023, Ms. Smith filed a motion to amend her complaint to add her son, Tracy Smith, as a plaintiff.  Docket No. 36 at 1.  Ms. Smith stated that Mr. Smith "is a Joint Owner of the property in question."  *Id*. at 1-2.  Ms. Smith stated that the "Amended Complaint is identical to the complaint served on Defendants except for the addition of Mr. Smith as a Plaintiff."  *Id*. at 1.  The magistrate judge granted plaintiff's

to build a seasonal residence on the property.  *Id*. at 9.  Defendant Tara Medina is the

Land Administrator for Costilla County, Colorado (the "County").  *Id*. at 10, 15.

Defendant Colleen Romero is a County employee who works closely with Ms. Medina.

*Id*. at 15.  Ms. Romero is also listed on the County's website as a registered

independent contractor for septic system design.  *Id*. at 8, 12.

On August 1, 2022, plaintiffs paid for a road access permit, a minor development

permit, and an Onsite Wastewater Treatment System ("OWTS") permit.  *Id*. at 9.[3]  An

OWTS is a septic system.  *Id*.  On August 29, 2022, Ms. Medina signed the road access

permit and the minor development permit.  *Id*.  However, Ms. Medina refuses to give

plaintiffs the signed OWTS permit until the OWTS is installed and inspected.  *Id*. at 4, 8,

10.  Ms. Medina explained the County's OWTS permitting system to Ms. Smith over

email as follows:

> [1] You apply for the permit
> [2] We review the soil evaluation
> [3] [W]e will call to tell you to install [the OWTS] (Which we did all ready [sic])
> [4] [Y]ou call for an inspection
> [5] Once we do the inspection and it passes[,] I can sign the permit.  The faster
> you install the system[,] the faster the application will get approved[.]

*Id*. at 11 (quoting October 10, 2022 email from Ms. Medina to Ms. Smith).  Ms. Medina

also stated to Ms. Smith in another email that the "OWTS permit application do[es] not

get APPROVED until the septic is INSTALLED AND INSPECTED.  We did inform you

that you can install your septic."  *Id*. at 10. (quoting October 10, 2022 email from Ms.

Medina to Ms. Smith).

---

motion to amend the complaint.  Docket No. 38.  The Court presumes that the plaintiffs
refer to both Ms. Smith and Mr. Smith when they state "plaintiff."

[3] Plaintiffs paid $500 to the County for the OWTS permit.  *Id*. at 16.

Plaintiffs argue that this process is "not documented anywhere in the Costilla County Residential Development Policy and Procedure document." *Id*. at 11. Plaintiffs state that they have "never seen a situation where county officials withhold a permit until after construction is completed and fear[] unjust motives may be behind Defendants' conduct." *Id*. Ms. Smith has "owned and built several houses in her lifetime" and has never seen "such a situation." *Id*. at 12. Plaintiffs called other counties in Colorado and "found that they do not have a rule requiring installation of the septic system before the OWTS installation permit is even issued." *Id*. Plaintiffs argue that they cannot apply for a construction permit to build their seasonal residence until they obtain the OWTS permit. *Id*. at 4-5. Ms. Smith "fears being drawn into a situation where she does not have the documentation of exactly what she is permitted to install or required to install." *Id*. at 11.

Plaintiffs also express dissatisfaction with Ms. Romero's involvement in the OWTS process. *See id*. at 8-9, 12-13. Plaintiffs contacted Ms. Romero to provide the required soil tests and septic design for the OWTS. *Id*. at 9. Plaintiffs allege that they paid Ms. Romero, as an independent contractor, "$500 directly for Soil Tests that should have been included as part of the Fee paid to County Treasurer Lorraine Medina as well as for a Septic Design." *Id*. at 8. While performing the services, Ms. Romero was only onsite at plaintiffs' property for about 15 minutes. *Id*. at 13. Ms. Romero "persisted in trying to persuade Plaintiff to use Gravelless Infiltrator chambers" instead of a "Gravel and Pipe system." *Id*. Plaintiffs believe that a Gravel and Pipe system "represent[s] a better value" and is less likely to develop "pest infiltration." *Id*. Ms. Romero never

performed a "perc test" even though "this test is listed on the Costilla County Fee schedule as being included as part of the $500 fee paid directly to the county."  *Id.*

To date, plaintiffs have installed a culvert on the road, put rocks on the access road to prevent erosion, imported washed gravel and a concrete tank for the OWTS, and performed an initial excavation for the OWTS.  *Id.* at 9, 18.  Plaintiffs have repeatedly demanded the OWTS permit document from defendants.  *Id.* at 9-10.  Ms. Medina verbally authorized the installation of the OWTS system, but refuses to provide the OWTS permit until after the OWTS is installed and inspected.  *Id.* at 9, 17.

Plaintiffs assert claims against both defendants under the "Due Process Clause of the 5th and 14th Amendments" pursuant to 42 U.S.C. § 1983.  *Id.* at 3.  Plaintiffs allege that defendants' refusal to provide the OWTS permit until after installation violates their "rights to fair and due process;" their rights "to benefit from [their] property;" and "Colorado's Basic Rules for Local Administration," Colo. Rev. Stat. § 25-10-106.  *Id.* at 8, 11.  Specifically, plaintiffs argue that

> Defendants have violated Plaintiff's rights to due process emanating from the bill o[f] rights and the 14th Amendment to the Constitution of the United States of America by their repeated, untenable, unreasonable, and unjust insistence that Plaintiff must install an OWTS which they will then approve before the Permit to install the OWTS is actually signed and issued to Plaintiff.  This prevents plaintiff from any reasonable use and benefit from her property because plaintiff simply does not know what specifications and design have actually been permitted, cannot prove to third parties that she has been granted a permit to legally install the system, and according to Ms. Medina cannot even Apply for a construction permit because Defendants refuse to issue the OWTS Permit.

*Id.* at 4 (emphasis omitted).

Plaintiffs seek injunctive relief ordering defendants to "produce the Actual Signed Permit," *id.* at 5, as well as costs.  *Id.* at 18.  With respect to Ms. Romero, plaintiffs request "that the money paid to Ms. Romero be returned to Plaintiff as Romero failed to

provide appropriate soil evaluation and design services and demonstrated her personal lack of competence in failing to provide an appropriate design for the septic system while also charging a fee for services that should have been covered by the $500 plaintiff paid directly to the County Treasurer." *Id*.

On January 23, 2023, defendants filed a motion to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Docket No. 42. Plaintiffs filed a response. Docket No. 79. Defendants filed a reply. Docket No. 91.

## II.   LEGAL STANDARD

### A.   <u>Motion to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. *Pro Se* Plaintiffs

A *pro se* plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  The "court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)).  Therefore, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity

with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110). Because plaintiffs are proceeding *pro se*, the Court will construe their pleadings liberally without serving as their advocate. *See Hall*, 935 F.2d at 1110.

### C. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v.*

*Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson*, 555 U.S. at 236.

## III.    ANALYSIS

Plaintiffs assert claims against both defendants under the "Due Process Clause of the 5th and 14th Amendments" pursuant to 42 U.S.C. § 1983.  Docket No. 39 at 3.  Plaintiffs describe their claims as "Deprivation of Just, Fair, and Due Process and rights to Property Under Color of Official Right."  *Id.* at 4.  Accordingly, the Court liberally construes the allegations in plaintiffs' third amended complaint as raising a substantive due process claim under the Fourteenth Amendment, a procedural due process claim under the Fourteenth Amendment, and a takings claim under the Fifth Amendment.

The third amended complaint does not state whether the defendants are sued in their individual or official capacities.  "When, as here, the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability."  *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1244 (10th Cir. 2007) (internal quotations and citation omitted).  The third amended complaint

challenges the County's policy for issuing OWTS permits, *see* Docket No. 39 at 11, which is an act that defendants perform in their official capacity.  However, the allegations in the third amended complaint also describe defendants as "rogue individuals" with "unjust motives."  *Id*. at 8, 11.  Plaintiffs' response to the motion to dismiss indicates an intent to sue defendants in both their individual and official capacities.  *See* Docket No. 79 at 20 ("Plaintiffs believe defendants act in both official and individual capacities when it suits their self interests.").  Accordingly, the Court liberally construes the claims as being filed against defendants in both their individual and official capacities.  *See Meadows v. Whetsel*, 245 F. App'x 860, 862 (10th Cir. 2007) (unpublished) ("It is unclear whether Sheriff Whetsel was sued in his official or his individual capacity, so we will assume that he was sued in both."); *Lopez v. El Paso Cnty. Sheriff*, No. 22-cv-00554-RMR-MDB, 2023 WL 196332, at *3 (D. Colo. Jan. 17, 2023) (noting that "where the Complaint is not entirely clear, and where Plaintiff is a *pro se* litigant, the Court will presume that Defendant has been sued in his official and individual capacities").

Defendants argue that this case should be dismissed because the action is moot; plaintiffs failed to adequately plead a substantive due process claim, a procedural due process claim, or a takings claim; plaintiffs failed to state any claim for relief "regarding Defendant Romero's design services;" and defendants are entitled to qualified immunity.  Docket No. 42 at 3-12; *see also* Docket No. 91 at 2-13.

### A.  <u>Mootness</u>

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Wiley v. Nat'l*

*Collegiate Athletic Ass'n*, 612 F.2d 473, 475 (10th Cir. 1979) (noting that mootness "has its constitutional origin in the 'case or controversy' limitation of Article III"). Thus, "mootness is a threshold issue" that implicates the Court's subject-matter jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). In the mootness inquiry, the "crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Kansas Jud. Rev. v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (citations omitted). "A party claiming that there is no longer a live case or controversy bears the burden of demonstrating mootness." *Id.* at 1245.

Defendants argue that this case should be dismissed under Fed. R. Civ. P. 12(b)(1) as moot because this "action arises from Plaintiffs' insistence that they receive written authorization to proceed with installing their OWTS system. Regardless of whether and in what form written permission is provided in Costilla County, Plaintiffs indisputably have it" because Ms. Medina informed plaintiffs both verbally and in writing that they could install the OWTS. Docket No. 42 at 3-4. As a result, the defendants argue that there is no relief the Court can grant and the case is therefore moot. *Id.* at 3. Plaintiffs respond that the case is not moot because plaintiffs have not received the OWTS permit. Docket No. 79 at 9.

The Court finds that this case is not moot. Plaintiffs seek the issuance of the signed OWTS permit before installing the OWTS. Docket No. 39 at 5, 8; *see also* Docket No. 79 at 5. Defendants have not provided the signed OWTS permit to

plaintiffs.  Docket No. 39 at 9.  Accordingly, there is still a live controversy.  The Court therefore denies this portion of defendants' motion to dismiss.

### B.  Substantive Due Process Claim

The Fourteenth Amendment prohibits a state from depriving a person of "property without due process of law."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting U.S. Const. Amend. XIV).  "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Id*.  Municipalities, however, have "broad latitude in regulating zoning and property uses."  *Schanzenbach v. Town of Opal, Wyo*., 706 F.3d 1269, 1276 (10th Cir. 2013).  "A municipal zoning ordinance will survive a substantive due process challenge so long as it is not clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Onyx Prop. LLC v. Bd. of Cnty. Comm'r of Elbert Cnty*., 838 F.3d 1039, 1048 (10th Cir. 2016) (quoting *Lingle v. Chevron*, 544 U.S. 528, 540-41 (2005) (internal alterations omitted)).  In other words, the "claim can survive only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning."  *Crider v. Bd. of Cnty. Comm'rs of Cnty. of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001) (citation omitted).  The "true purpose" of the regulation is irrelevant for the rational basis analysis; rather, the Court evaluates whether "a 'reasonably conceivable' rational basis exists."  *Id*. at 1289-90 (citations omitted).

Defendants argue that plaintiffs have failed to plead a substantive due process claim because the OWTS regulations are rational.  Docket No. 42 at 5-7.  Even if the OWTS regulations violate Colo. Rev. Stat. § 25-10-106, defendants argue that a substantive due process claim cannot be based on a violation of state law.  *Id*. at 6-7.  Furthermore, defendants argue that they are entitled to qualified immunity in their individual capacities.  *Id*. at 9-10; *see also* Docket No. 91 at 11.  Plaintiffs respond that the "OWTS regulations enforced by defendants" are not rational.  Docket No. 79 at 13.  Plaintiffs assert that the process "inherently introduces unwarranted delays preventing efficient, cost effective building practices."  *Id*. at 14.  Plaintiffs argue that the OWTS process does not comply with Colo. Rev. Stat. § 25-10-106.  *Id*. at 12-13.  Defendants reply that plaintiffs do not dispute that the County's OWTS process is rationally related to public health and safety, but rather argue that the "regulations should be different," which does not constitute a substantive due process violation.  Docket No. 91 at 6.

The Court finds that the County's OWTS permitting process is not clearly arbitrary or unreasonable.  The County's decision to issue a property owner the OWTS permit after the septic system is inspected is rationally related to advancing public health and safety.  The County could conceivably believe that issuing the permit after inspection will help reduce groundwater contamination, the spread of diseases, or other environmental issues.  *See* Colo. Rev. Stat. § 30-20-100.5(1)(b) ("Improper disposal of solid wastes poses significant public health risks, environmental hazards, and long-term liability for the citizens of the state."); *see also Schanzenbach*, 706 F.3d at 1277 (affirming dismissal of substantive due process claim where the municipality could have "rationally concluded that the [zoning regulation] would help preserve neighborhood

aesthetics").  The fact that other counties in Colorado may have different processes for issuing OWTS permits, *see* Docket No. 39 at 12, does not make Costilla County's process clearly arbitrary or unreasonable.

Furthermore, regardless of whether the County's OWTS process complies with Colo. Rev. Stat. § 25-10-106, a bad faith violation of state law does not constitute a cognizable Fourteenth Amendment substantive due process claim under 42 U.S.C. § 1983.  *See Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) (holding that a city's enforcement of an invalid zoning ordinance did not "give rise to a substantive-due-process claim" because a "bad-faith violation of state law remains only a violation of state law").  Accordingly, plaintiffs have failed to state a cognizable substantive due process claim.

Even if plaintiffs stated a plausible substantive due process claim, the Court finds that defendants would be entitled to qualified immunity in their individual capacities. Plaintiffs argue that defendants knew or should have known that their "conduct of refusing to provide land use permits" was unconstitutional.  Docket No. 79 at 34.[4] However, plaintiffs have identified no clearly established law and the Court has found no clearly established law from the Supreme Court or the Tenth Circuit holding that a

---

[4] Plaintiffs provide a lengthy explanation of why qualified immunity "undermines the Judicial Process and is itself a deprivation of the hard won rights embodied in the 14th Amendment."  Docket No. 79 at 23-35.  Plaintiffs argue that the clearly established law prong involves "counterproductive" and "circular reasoning."  *Id*. at 31.  Although plaintiffs express dissatisfaction with qualified immunity, it is binding precedent within the Tenth Circuit.  *See Surat v. Klamser,* 52 F.4th 1261, 1276 (10th Cir. 2022) ("plaintiffs may not identify their claim through extremely abstract rights because this would convert the rule of qualified immunity into a rule of virtually unqualified liability. Ultimately, this court must assess whether existing precedent has placed the statutory or constitutional question beyond debate." (internal citations, quotation, and alterations omitted)).  Accordingly, the Court declines to address these arguments.

government official violates substantive due process by refusing to issue a permit until after a sanitation system is installed and inspected.  As a result, the defendants are entitled to qualified immunity in their individual capacities.

The Court therefore grants this portion of defendants' motion and dismisses the substantive due process claim against defendants in both their individual and official capacities.  Plaintiffs did not file a motion for leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a) and D.C.COLO.LCivR 15.1.  In the third amended complaint, plaintiffs state, "[i]f the court finds Plaintiff's pleading fails to meet these standards or has other faults, Plaintiff respectfully requests leave to amend the complaint to satisfy the court."  Docket No. 39 at 16.  However, the Court finds that dismissal with prejudice is appropriate because it would be futile to give plaintiffs the opportunity to amend their complaint.  *See Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (unpublished) (holding that "[c]omplaints drafted by pro se litigants . . . are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him the opportunity to amend.'") (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).

### C.  Procedural Due Process Claim

In analyzing a procedural due process claim, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (citation omitted); *see also Reed v. Goertz*, 143 S. Ct. 955, 961 (2023).  "The essence

of procedural due process is the provision to the affected party of some kind of notice and some kind of hearing." *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (internal alterations, quotations, and citation omitted). The Court does not need to address whether a plaintiff possesses a protected property interest if the Court concludes that the plaintiff was afforded an appropriate level of process. *See Onyx Prop. LLC*, 838 F.3d at 1043 & n.2.

The following factors are relevant to whether an individual was afforded an appropriate level of process: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hattrup v. United States*, 845 F. App'x 733, 737 (10th Cir. 2021) (unpublished) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Defendants argue that plaintiffs offer no facts to support a procedural due process claim. Docket No. 42 at 7. Defendants assert that no property has been taken and the County's process is constitutionally sound. *Id*. Defendants argue that plaintiffs are "not entitled to the procedural form of their choice, only a constitutionally sound procedure." *Id*. at 8. Furthermore, defendants contend that a violation of Colo. Rev. Stat. § 25-10-106 would not constitute a procedural due process violation. *Id*. Defendants also argue that they are entitled to qualified immunity in their individual capacities. *Id*. at 9-10.

Plaintiffs' procedural due process claim is unclear from the face of the third amended complaint.  However, plaintiffs appear to argue that defendants have violated their procedural due process rights in four ways.  First, plaintiffs argue that they are "entitled to due process regarding restrictions of their personal property rights which are clearly fundamental rights in Colorado."  Docket No. 79 at 16.  Plaintiffs argue that they have been "deprived of any economically viable use of their property."  *Id*.  Second, plaintiffs appear to argue that defendants' OWTS procedure does not comply with Colorado law, Colo. Rev. Stat. § 25-10-106.  *See id*. at 3, 16-17.  Third, plaintiffs argue that they have been deprived of the OWTS permit.  *Id*. at 16.  Fourth, plaintiffs allege that they have been "denied the right to even apply for a construction permit."  *Id*.

The Court first addresses plaintiffs' procedural due process claim alleging that they have been "deprived of any economically viable use of their property."  *See id*.  The Tenth Circuit has explained that

> [b]ecause the Just Compensation Clause of the Fifth Amendment imposes very specific obligations upon the government when it seeks to take private property, we are reluctant in the context of a factual situation that falls squarely within that clause to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause.

*Miller v. Campbell Cnty*., 945 F.2d 348, 352 (10th Cir. 1991); s*ee also Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1282 (10th Cir. 2013).  Plaintiffs' claim that they have been deprived of all economically viable use of their property is clearly encompassed by their takings claim under the Fifth Amendment.  Accordingly, the Court finds that it is "appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause."  *Miller*, 945 F.2d at 352.  The Court therefore denies plaintiffs' procedural due

process claim to the extent that it alleges they have been deprived of all economically viable use of their property and will instead address these allegations under the Fifth Amendment's takings clause.

The Court next addresses plaintiffs' argument that defendants' OWTS permitting process violates procedural due process because the procedure does not comply with Colo. Rev. Stat. § 25-10-106.  The Tenth Circuit has repeatedly held that a "[v]iolation of state procedural requirements . . . does not in itself deny federal constitutional due process."  *Onyx Prop. LLC*, 838 F.3d at 1044 (collecting cases); *see also Rector v. City & Cnty. of Denver*, 348 F.3d 935, 947 (10th Cir. 2003) ("It is well established, however, that a state's violation of its own laws does not create a claim under § 1983."). Accordingly, the Court dismisses plaintiffs' procedural due process claim to the extent that it is based on a failure to comply with Colo. Rev. Stat. § 25-10-106.

Furthermore, the Court finds that plaintiffs have failed to adequately plead a due process claim to the extent it is based on allegations that defendants have deprived plaintiffs of the OWTS permit.  Without considering whether plaintiffs possess a protected property interest in an OWTS permit, *see Onyx Prop. LLC*, 838 F.3d at 1043 & n.2, or whether defendants have actually "deprived" plaintiffs of the OWTS permit, the Court finds that plaintiffs have failed to adequately plead the second element of a procedural due process claim.  Plaintiffs do not identify what type of notice or process was due to them.  *See Martin v. Milner*, No. 07-cv-02689-REB-KLM, 2008 WL 4748519, at *9 (D. Colo. Oct. 28, 2008) (finding allegations insufficient to state a due process claim where the plaintiff's complaint did "not articulate what type of process (e.g., notice and a hearing) should have been, but was not, provided to her"); *Medina v. Danaher*,

17

No. 17-cv-00268-PAB-GPG, 2018 WL 4538789, at *4 (D. Colo. Sept. 21, 2018) (same);

*see also Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a

procedural due process claim, a complaint must suggest 'what sort of process is due.'").

Accordingly, the Court dismisses plaintiffs' procedural due process claim to the extent

that it is based on a deprivation of the OWTS permit.

Finally, the Court finds that plaintiffs' procedural due process claim alleging that

plaintiffs have been "denied the right to even apply for a construction permit," *see*

Docket No. 79 at 16, is moot. "Because mootness is a matter of jurisdiction, a court

may raise the issue sua sponte." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867

(10th Cir. 1996). The mootness "requirement exists at all stages of federal judicial

proceedings, and it is therefore not enough that the dispute was alive when the suit was

filed; the parties must continue to have a personal stake in the outcome." *Id*. On July

27, 2023, plaintiffs filed an exhibit with the Court demonstrating that Ms. Medina granted

plaintiffs' construction application on July 11, 2023. Docket No. 100. Plaintiffs admit

that they "did apply for the construction permit" and the County's attorney "emailed the

construction permit finally signed by Ms. Medina on July 11, 2023." Docket No. 102 at

2. Accordingly, plaintiffs' due process claim that defendants denied them the right to

apply for a construction permit is moot because plaintiffs currently have the construction

permit. *See* Docket No. 100.

Even if plaintiffs stated a plausible procedural due process claim on these

theories, the Court finds that defendants would be entitled to qualified immunity in their

individual capacities. Plaintiffs argue that defendants knew or should have known that

their "conduct of refusing to provide land use permits" was unconstitutional. Docket No.

18

79 at 34.  However, plaintiffs have identified no clearly established law and the Court has found no clearly established law from the Supreme Court or the Tenth Circuit holding that a government official violates procedural due process by refusing to issue a permit until after a sanitation system is installed and inspected.  As a result, the defendants are entitled to qualified immunity in their individual capacities.

The Court therefore grants this portion of defendants' motion and dismisses the procedural due process claim against defendants in both their individual and official capacities.  The Court dismisses the portion of the procedural due process claim that is based on the construction permit without prejudice.  *See Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal . . . must be without prejudice.").  The Court dismisses the rest of the procedural due process claim with prejudice because the Court finds it would be futile to give plaintiffs the opportunity to amend their complaint.  *See Fleming*, 573 F. App'x at 769.

## D.  Takings Claim

The Fifth Amendment's takings clause provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. Amend. V.; *see also Britton v. Keller*, 851 F. App'x 821, 824 (10th Cir. 2021) (unpublished) (noting that the Takings Clause applies against state and municipal entities through the Fourteenth Amendment).  The Supreme Court has recognized that "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

The Supreme Court has identified two categories of regulatory actions that constitute "per se" takings: (1) "where government requires an owner to suffer a permanent physical invasion of her property—however minor," and (2) "regulations that completely deprive an owner of '*all* economically beneficial use' of her property." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (quoting *Lingle*, 544 U.S. at 538).

Otherwise, a regulation may create a taking under the standards set forth in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). *See Britton*, 851 F. App'x at 824. If a regulation "impedes the use of property without depriving the owner of all economically beneficial use, a taking may still be found based on a 'complex of factors,' including (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *N. Mill St., LLC*, 6 F.4th at 1224 (quoting *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (citing *Penn Central*, 438 U.S. at 124)).

Defendants argue that there are no allegations in the complaint to support a takings claim, plaintiffs cannot assert this claim against defendants in their individual capacities, and defendants are entitled to qualified immunity. Docket No. 42 at 7, 9-10. Plaintiffs appear to argue that defendants' refusal to provide the OWTS permit is both a per se regulatory taking and a taking under *Penn Central*. *See* Docket No. 79 at 16. Plaintiffs assert that they have

> clearly stated in their complaint and the fact[s] show that they have been deprived of any economically viable use of their property due to the absurd, egregious refusal of defendants to provide the OWTS permit and that plaintiffs have been denied the right to even apply for a construction permit (as they should have been allowed to do back in August. Indeed consistent with a regulatory taking, plaintiffs are deprived of all economically reasonable use o[f]

their property as Defense process simply goes "too far" in restricting plaintiffs['] fundamental property rights, interferes tremendously with plaintiffs['] investment backed expectations and that the character of Defendants['] actions is highly suspect requiring Plaintiffs to spend far more money than should be necessary – essentially holding land use permits hostage to their unreasonable demands and process.

*Id*.[5]  Defendants respond that plaintiffs have not plausibly pled a claim that the County's regulations have deprived plaintiffs' property of "all economic value" or that the regulations constitute a taking under *Penn Central*.  Docket No. 91 at 8, 11.

The Court finds that plaintiffs have failed to plausibly state a takings claim under the Fifth Amendment.  First, plaintiffs have failed to allege a per se regulatory taking. The complaint contains no allegations suggesting that plaintiffs have suffered either a physical invasion of their property or that the OWTS regulations have deprived plaintiffs of "*all* economically beneficial use" of their property.  *See N. Mill St., LLC*, 6 F.4th at 1224.  Plaintiffs plead no facts suggesting that their property has lost "all economic value."  *See Murr*, 582 U.S. at 405.  For example, plaintiffs do not allege that the County's OWTS permitting process has inhibited their ability to sell the property to

---

[5] Plaintiffs' response asserts new facts regarding the takings claim that are not included in the third amended complaint.  *See* Docket No. 79 at 4.  Plaintiffs state that the County's process has inflicted "tremendous additional costs and delays" with equipment rentals because under the County's process "plaintiffs cannot proceed with work on the house (specifically the foundation) while simultaneously using the equipment to complete the septic system installation."  *Id*.  Plaintiffs state that the equipment rentals cost $500 per day.  *Id*.  However, plaintiffs cannot amend their "complaint by adding factual allegations in response to [defendants'] motion to dismiss." *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint)).  Accordingly, the Court will not consider whether the added expense of equipment rentals states a takings claim.

another buyer or to use the property for any non-residential purposes, such as agriculture or farming.  *See River N. Prop., LLC v. City & Cnty. of Denver*, No. 13-cv-01410-CMA-CBS, 2014 WL 7437048, at *5 (D. Colo. Dec. 30, 2014) (holding that plaintiff failed to allege a takings claim because the complaint contained no allegations indicating that plaintiff was unable to sell the property or apply for other uses for the property due to defendant's regulations).  Plaintiffs' argument that they have been deprived of "any economically viable use of their property," *see* Docket No. 79 at 16, is therefore conclusory.

Second, the Court finds that plaintiffs have failed to plead a takings claim under *Penn Central*.  Regarding the first factor, plaintiffs do not plead any allegations suggesting that the County's OWTS process has diminished their property's value. Defendants are not prohibiting plaintiffs from developing their property.  Ms. Romero informed Ms. Smith twice via email that plaintiffs could install the OWTS and would receive the OWTS permit after the system was installed and inspected.  *See* Docket No. 39 at 10-11.  Plaintiffs admit in their response that they received the approved design specification documents for the OWTS from the County.  Docket No. 79 at 11.  Plaintiffs claim that they cannot apply for a construction permit to build their seasonal residence until they obtain the OWTS permit.  Docket No. 39 at 4-5.  However, as stated previously, Ms. Medina already granted plaintiffs' construction application on July 11, 2023.  Docket No. 100.  The Court therefore concludes that any economic impact of the OWTS regulations on plaintiffs is minimal.  Regarding the second factor, plaintiffs have alleged some interference with their investment backed expectations: plaintiffs allege that Ms. Smith has built several homes in her lifetime and plaintiffs have "never seen a

situation where county officials withhold a permit until after construction is completed."
Docket No. 39 at 11-12.  Regarding the third factor, the governmental action at issue
here involves public health and safety.  "Plaintiffs must expect the uses of their property
to be restricted, from time to time, by various measures newly enacted by the state in
legitimate exercise of its police powers."  *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199,
1210 (10th Cir. 2009) (internal alterations, quotations, and citation omitted); *see also*
*Penn Central*, 438 U.S. at 125 (noting that laws meant to support "the health, safety,
morals, or general welfare" of the entire community are generally upheld even if they
destroy or adversely affect private property interests).  Therefore, the Court concludes
that plaintiffs have failed to allege a plausible *Penn Central* takings claim.

Even if plaintiffs stated a plausible takings claim under the Fifth Amendment, the
Court finds that defendants would be entitled to qualified immunity in their individual
capacities.[6]  Plaintiffs argue that defendants knew or should have known that their
"conduct of refusing to provide land use permits" was unconstitutional.  Docket No. 79 at

---

[6] Defendants argue that a recent Tenth Circuit decision held that "a taking claim
cannot lie against officials sued in their individual capacities."  Docket No. 42 at 9-10
(citing *Hinkle Fam. Fun Ctr., LLC v. Grisham*, 2022 WL 17972138, at *4 (10th Cir. Dec.
28, 2022) (unpublished)).  However, in *Grisham*, the Tenth Circuit held that defendants
were entitled to qualified immunity because "there was no clearly established law stating
that restrictions like those imposed on the Businesses by the Orders constituted a
taking within the meaning of the Constitution."  *Grisham*, 2022 WL 17972138, at *4.
The Tenth Circuit noted that the district court rejected the takings claim on the ground
that "such a claim cannot be brought against governmental officials in their individual
capacities."  *Id*. at *4 n.2.  The Tenth Circuit stated that it "adopt[ed] what we believe to
be an easier path to resolving the issue," namely the clearly established law prong of
qualified immunity, but that there "is substantial support for the district court's approach.
We are not aware of any circuit court that has explicitly held that a takings action can be
brought against a state official in an individual capacity."  *Id*.  The Tenth Circuit in
*Grisham* did not explicitly rule that a takings action cannot be brought against a
government employee in their individual capacity.  *See id*.  Accordingly, the Court will
evaluate whether defendants are entitled to qualified immunity on the second prong.

34.  However, plaintiffs have identified no clearly established law and the Court has found no clearly established law from the Supreme Court or the Tenth Circuit holding that a government official violates the takings clause by refusing to issue a permit until after a sanitation system is installed and inspected.  As a result, the defendants are entitled to qualified immunity in their individual capacities.

The Court therefore grants this portion of defendants' motion and dismisses the takings claim against defendants in both their individual and official capacities.  The Court finds that dismissal with prejudice is appropriate because it would be futile to give plaintiffs the opportunity to amend their complaint.  *See Fleming*, 573 F. App'x at 769.  Even if the Court allowed plaintiffs to add new facts to their complaint regarding the added expense of equipment rentals, *see supra* n.5, those allegations would not state a takings claim under the Fifth Amendment.  Plaintiffs state that the County's process has inflicted "tremendous additional costs and delays" with equipment rentals because under the County's process "plaintiffs cannot proceed with work on the house (specifically the foundation) while simultaneously using the equipment to complete the septic system installation."  Docket No. 79 at 4.  Plaintiffs state that the equipment rentals cost $500 per day.  *Id*.  These facts would not state a per se regulatory takings claim because an additional expense of $500 per day for equipment rentals would not deprive plaintiffs of "*all* economically beneficial use" of their property.  *See N. Mill St., LLC*, 6 F.4th at 1224.  These facts would also not state a *Penn Central* takings claim because the economic impact of the regulation appears minimal, plaintiffs do not state that they had any distinct investment-backed expectations regarding equipment rentals when they decided to purchase the property, and the County's permitting process

involves public health and safety.  *See id.*; *Henry*, 555 F.3d at 1210; *Penn Central*, 438 U.S. at 125.  Furthermore, defendants would be entitled to qualified immunity in their individual capacities on this claim for the same reasons the Court previously discussed regarding clearly established law.  Accordingly, it would be futile to give plaintiffs the opportunity to amend their complaint and the Court therefore dismisses the takings claim with prejudice.

IV.    **Ms. Romero's Design Services**

Defendants argue that any claim for relief regarding Ms. Romero's design services should be dismissed because plaintiffs do not allege that Ms. Romero was "acting under color of law" when she performed those services.  Docket No. 42 at 9. Defendants argue that only a person acting under color of state law can violate § 1983. *Id*.  Plaintiffs respond that Ms. Romero acts in "both a personal and official capacity." Docket No. 79 at 18.

The Court finds that plaintiffs have failed to plead "sufficient facts to allow the court to reasonably infer that [Ms. Romero] was acting under color of state law" when she performed the design services.  *See Wilkins v. Chrisman*, 665 F. App'x 681, 684 (10th Cir. 2016) (unpublished).  "Section 1983 provides a federal civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution' by any person acting under color of state law."  *Id*. (quoting *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011) (quoting 42 U.S.C. § 1983)).  Under Section 1983, liability attaches only to conduct occurring "under color of law."  *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).  "Thus, the only proper defendants in a Section 1983 claim are those who represent the state in some capacity,

whether they act in accordance with their authority or misuse it." *Id.* (internal quotations, alterations, and citation omitted).  Plaintiffs do not allege that Ms. Romero was acting in her capacity as a County employee when she performed the design services.  Instead, plaintiffs allege that Ms. Romero is listed on the County's website as a registered independent contractor for septic system design and that plaintiffs contacted Ms. Romero to perform the required soil tests and septic design for the OWTS.  Docket No. 39 at 8-9, 12.  Plaintiffs allege that they paid Ms. Romero, as an independent contractor, "$500 directly for Soil Tests that should have been included as part of the Fee paid to County Treasurer Lorraine Medina as well as for a Septic Design." *Id*. at 8. Accordingly, plaintiffs have failed to plead sufficient facts to allow the Court to conclude that Ms. Romero was acting under color of state law when she performed the design services.  Therefore, plaintiffs cannot state a claim against Ms. Romero for the design services under § 1983.

Even if Ms. Romero was acting under color of state law, plaintiffs have failed to show how Ms. Romero's conduct violates a federal statutory or constitutional right. Plaintiffs argue that Ms. Romero was only onsite at plaintiffs' property for about 15 minutes, Ms. Romero "persisted in trying to persuade Plaintiff to use Gravelless Infiltrator chambers," and Ms. Romero never performed a "perc test." *Id*. at 13. Plaintiffs provide no explanation as to how this conduct violates their due process rights or any other constitutional or statutory right.

Accordingly, the Court grants this portion of defendants' motion to dismiss and dismisses the design services claim against Ms. Romero with prejudice.

**V.      CONCLUSION**

It is therefore

**ORDERED** that the Motion to Dismiss Third Amended Complaint (ECF 39) [Docket No. 42] is **GRANTED**.  It is further

**ORDERED** that the portion of plaintiffs' procedural due process claim alleging a denial of the right to apply for a construction permit is **DISMISSED without prejudice** against defendants Tara Medina and Colleen Romero in their individual and official capacities.  It is further

**ORDERED** that **all other claims** against defendants Tara Medina and Colleen Romero in their individual and official capacities are **DISMISSED with prejudice**.  It is further

**ORDERED** that plaintiffs' Motion for Declaratory and Injunctive Relief [Docket No. 47] is **DENIED as moot**.  It is further

**ORDERED** that this case is closed.

DATED September 14, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge